UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
SHAHEEM L. MORRIS,

                Plaintiff,

    -against-

NEW YORK STATE POLICE; SARATOGA COUNTY
SHERIFF'S OFFICE; NEW YORK STATE TROOPER
MATTHEW J. ZELL; NEW YORK STATE TROOPER
JAMES T. MEEHAN, NEW YORK STATE TROOPER
KEVIN P. REPPENHAGEN, JOHN DOE SARATOGA
COUNTY SHERIFF'S OFFICERS 1–5,

**VERIFIED COMPLAINT**
(Jury Trial Demanded)

1:26-cv-53 (GTS/PJE)

                Defendants.
------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      Plaintiff brings this civil rights action under 42 U.S.C. § 1983 and state law seeking redress for violations of his rights under the United States Constitution, the New York State Constitution, and New York common law. On January 6, 2025, Plaintiff was assaulted, unlawfully arrested, and maliciously prosecuted by members of the New York State Police and the Saratoga County Sheriff's Office at his home in Clifton Park, New York, Town of Halfmoon. Plaintiff seeks compensatory damages, punitive damages, attorney's fees and such other relief as the Court deems just.

## JURISDICTION AND VENUE

2.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

3.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

1

4.    Venue is proper in this District under 28 U.S.C. § 1391(b) because the events occurred in Saratoga County.

## PARTIES

5.    Plaintiff SHAHEEM L. MORRIS is a resident of New York.

6.    Defendant NEW YORK STATE POLICE ("NYSP") is a state law enforcement agency.

7.    Defendant SARATOGA COUNTY SHERIFF'S OFFICE is a county law enforcement agency.

8.    Defendant New York State TROOPER MATTHEW J. ZELL was at all relevant times a New York State Trooper.

9.    Defendant New York State TROOPER JAMES T. MEEHAN was at all relevant times a New York State Trooper.

10.    Defendant New York State TROOPER KEVIN P. REPPENHAGEN was at all relevant times a New York State Trooper.

11.    Defendants JOHN DOE SARATOGA SHERIFF'S OFFICERS 1–5 are unidentified law enforcement officers employed by SARATOGA COUNTY SHERIFF'S OFFICE.

## FACTUAL ALLEGATIONS

12.    On or about January 6, 2025, at approximately 12:00 a.m., Shaheem L. Morris (hereinafter the "Plaintiff") was inside his residence located at 62 Carol Jean Lane, Clifton Park, New York, Town of Halfmoon, with his ten-year old daughter, three-month-old infant daughter and the children's mother, Jahmarah Brodhurst (hereinafter "Ms. Brodhurst").

13.    Earlier that evening, Plaintiff and Ms. Brodhurst engaged in a verbal disagreement regarding household noise levels and car keys. The disagreement was non-physical and did not involve threats, violence, or criminal conduct.

14.    Plaintiff attempted to leave the residence to begin his work for DoorDash. Ms. Brodhurst took Plaintiff's car keys and concealed them, preventing Plaintiff from leaving to work.

15.    Ms. Brodhurst then placed a call to 911 and left the line open, without reporting any physical violence or emergency requiring immediate police intervention.

16.    Shortly thereafter, New York State Trooper Matthew J. Zell (hereinafter "Trooper Zell"); New York State Trooper James T. Meehan (hereinafter "Trooper Meehan"), New York State Trooper Kevin P. Reppenhagen (hereinafter "Trooper Reppenhagen"), and John Doe Saratoga County Sheriff's Officers 1–5 arrived at Plaintiff's residence and knocked on the door.

17.    Upon information and belief, Trooper Zell aggressively knocked on the door when there was no response.  Ms. Brodhurst shortly thereafter opened the door while Plaintiff was holding his three-month-old daughter in his arms in the living room.

18.    At no time did Plaintiff pose a threat to any person or law enforcement officer in the residence or commit a crime.

19.    Defendant Trooper Zell then entered the apartment and immediately ordered Plaintiff to put his infant child down while New York State Troopers James T. Meehan and Kevin P. Reppenhagen assisted Trooper Zell in detaining Plaintiff.  This was done before any person was identified, questioned, or after officers determined that a crime had been committed.

20.    Without warning, justification, or provocation, Trooper Zell forcibly pushed Plaintiff backward onto a couch, restricting Plaintiff's movement while Plaintiff was still holding his infant daughter, and ordered Plaintiff to put his infant daughter down while using profanity.

3

21.    Plaintiff asked why he had to put his child down and stated that he wished to continue holding his child because he feared New York State Trooper Matthew J. Zell's aggressive demeanor. Plaintiff did not make any verbally threatening or physically threatening movements.

22.    Without any warning, Trooper Zell then repeatedly punched Plaintiff in the face with his fists while defendants New York State Troopers James T. Meehan and Kevin P. Reppenhagen assisted in restraining Plaintiff.

23.    Plaintiff attempted to shield his face and his infant daughter during this assault and at no point did Plaintiff resist, strike any law enforcement officers in retaliation, or try to flee during Trooper Zell's punches.

24.    Body-worn camera footage shows that Trooper Zell's punches were delivered within inches of Plaintiff's infant daughter's head and body, placing the child in immediate danger of serious physical harm. The proximity of the punches to the infant was so close that she was covered in Plaintiffs blood.

25.    Multiple Saratoga County Sheriff's Deputies were present, observed the assault in real time, and are visible on body-worn camera footage standing nearby while Trooper Zell struck Plaintiff.

26.    Despite having a clear opportunity to do so, no deputy or trooper attempted to intervene, de-escalate the situation, or remove the infant child from the immediate zone of danger.

27.    Following the assault, Defendant Trooper Zell later charged Plaintiff with the following offenses: Menacing in the Third Degree (Penal Law § 120.15); Endangering the Welfare of a Child (Penal Law § 260.10); Aggravated Family Offense; Obstructing Governmental Administration in the Second Degree (Penal Law § 195.05); Criminal Mischief (Penal Law § 145.00); Resisting Arrest (Penal Law § 205.30); and Harassment (Penal Law § 240.26).

4

28. As a direct and proximate result of Trooper Zell's use of force, Plaintiff sustained severe injuries, including a displaced maxillary sinus fracture, nasal bone fracture, multiple facial fractures, injury to his left eye with laceration, multiple facial lacerations, facial pain on the left side, dizziness, and a concussion.

29. These injuries required surgical intervention and resulted in long lasting pain, numbness, tingling, and optical complications.

30. The Halfmoon Town criminal court ultimately dismissed all charges against Plaintiff by way of a non-conditional Adjournment in Contemplation of Dismissal, thereby terminating the prosecution in Plaintiff's favor.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION 42 U.S.C. § 1983 –
### False Arrest / Unlawful Seizure
*(Against Defendants Trooper Matthew J. Zell, Trooper James T. Meehan, and Trooper Kevin P. Reppenhagen)*

31. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

32. At all relevant times, Defendants New York State Trooper Matthew J. Zell (hereinafter "Trooper Zell"); New York State Trooper James T. Meehan (hereinafter "Trooper Meehan") and New York State Trooper Kevin P. Reppenhagen (hereinafter "Trooper Reppenhagen"), were acting under color of state law in their capacities as sworn members of the New York State Police.

33. Without a warrant, probable cause, consent, or any lawful justification, Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen jointly and in concert initiated an unlawful seizure of Plaintiff inside his residence by exerting physical authority and control over Plaintiff's person.

5

34.    Defendant Trooper Zell initiated physical contact with Plaintiff by pushing him toward a couch, placing his hands on Plaintiff's shoulder, and restricting Plaintiff's movement, while Defendants Trooper Meehan and Trooper Reppenhagen were present, aware of the lack of legal justification, and actively assisted in effectuating and maintaining Plaintiff's confinement.

35.    While Plaintiff was holding his infant child, Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen ordered Plaintiff to surrender the child, thereby escalating the encounter, asserting dominion and control over Plaintiff's person, and further restraining Plaintiff's liberty.

36.    Defendants Trooper Meehan and Trooper Reppenhagen aided and abetted the unlawful seizure by positioning themselves in close proximity to Plaintiff, reinforcing Trooper Zell's commands, assisting in restricting Plaintiff's movement, and preventing Plaintiff from leaving or otherwise terminating the encounter.

37.    As a result of the coordinated actions of Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen, Plaintiff was not free to leave, move about his residence, or disengage from the encounter, and was effectively seized within the meaning of the Fourth Amendment.

38.    No identification of any person at the residence was made and no investigation of any crime being committed was conducted or confirmed before Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen seized Plaintiff and used force.  Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen did not even confirm that they were at the correct address.

39.    Plaintiff was conscious of his confinement, as evidenced by his repeated statements that he had done nothing wrong and his verbal objections to Defendants' conduct.

40.    Plaintiff did not consent to being seized, detained, or arrested by Defendants Trooper Zell, Trooper Meehan, or Trooper Reppenhagen.

41.    Under the circumstances presented, Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen lacked probable cause and any other legal privilege to seize, detain, or arrest Plaintiff.

42.    By jointly participating in and assisting the unlawful seizure of Plaintiff without probable cause, Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen violated Plaintiff's clearly established rights under the Fourth Amendment to the United States Constitution.

43.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered loss of liberty, emotional distress, physical pain, humiliation, and other damages.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – Excessive Force (Assault and Battery)**
*(Against Defendants Trooper Matthew J. Zell, Trooper James T. Meehan, and Trooper Kevin P. Reppenhagen, Individually)*

44.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

45.    At all relevant times, Defendants Trooper Matthew J. Zell, Trooper James T. Meehan, and Trooper Kevin P. Reppenhagen were acting under color of state law in their capacities as sworn law-enforcement officers.

46.    While inside Plaintiff's residence and without legal justification, Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen jointly and in concert used physical force against Plaintiff by initiating contact, restricting his movement, and exerting physical control over his body.

7

47. Trooper Zell initiated the use of force by placing his hands on Plaintiff, pushing Plaintiff toward a couch, and striking Plaintiff with closed-fist punches, while Trooper Meehan and Trooper Reppenhagen actively assisted by restraining Plaintiff, limiting his ability to protect himself and his infant daughter, and facilitating the continued application of force.

48. At the time Defendants used force, Plaintiff was not resisting, was not attempting to flee, fight back and posed no threat to Defendants or any other person, and was holding his infant child.

49. Defendants' actions caused Plaintiff to reasonably apprehend imminent harmful and offensive physical contact, constituting an assault under New York law.

50. Defendants thereafter made harmful and offensive physical contact with Plaintiff without his consent, constituting a battery under New York law.

51. The force used by Defendants was objectively unreasonable under the totality of the circumstances, grossly disproportionate to any legitimate law-enforcement objective, and unnecessary to effectuate any lawful police purpose.

52. Defendants' conduct occurred during an unlawful seizure and violated Plaintiff's clearly established rights under the Fourth Amendment to the United States Constitution to be free from excessive force.

53. Upon information and belief, one or more Defendants were equipped with body-worn cameras at the time of the incident, and the unlawful use of force inflicted upon Plaintiff was captured, in whole or in part, on body-worn camera footage.

54. The body-worn camera footage corroborates Plaintiff's account that he was compliant, non-threatening, and subjected to physical force without provocation or legal justification.

55.     Defendants' conduct was intentional, malicious, reckless, and demonstrated a callous disregard for Plaintiff's constitutional rights and physical safety, particularly given the presence of Plaintiff's infant child in his arms.

56.     As a direct and proximate result of Defendants' unlawful use of force, Plaintiff suffered physical pain, emotional distress, fear, humiliation, loss of dignity, and severe physical injuries.

57.     Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen are not entitled to qualified immunity because no reasonable officer would believe that the use of physical force against a non-resisting individual holding an infant child inside his own home was lawful without first establishing probable cause, observing a crime, or to prevent immediate physical injury or death to a person.

58.     Plaintiff is entitled to an award of **punitive damages** against Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen in their individual capacities, as their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to Plaintiff's federally protected rights.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 – Failure to Intervene
*(Against Defendants Trooper James T. Meehan, Trooper Kevin P. Reppenhagen, and John Doe Saratoga County Sheriff's Deputies)*

59.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60.     At all relevant times, Defendants Trooper James T. Meehan, Trooper Kevin P. Reppenhagen, and John Doe Saratoga County Sheriff's Deputies were acting under color of state law in their capacities as sworn law-enforcement officers.

9

61. During the incident described herein, Defendants Trooper James T. Meehan, and Trooper Kevin P. Reppenhagen were present inside Plaintiff's residence and observed, or had reason to know of, Trooper Zell's unlawful seizure of Plaintiff and use of excessive force, including the physical assault and battery alleged above.

62. Defendants Trooper Meehan, Trooper Reppenhagen, and the John Doe Saratoga County Sheriff's Deputies were in close physical proximity to Trooper Zell and had a realistic and reasonable opportunity to intervene to prevent or stop the unconstitutional conduct.

63. At all relevant times, Defendants had the ability to intervene, de-escalate the situation, issue verbal commands, physically intercede, or otherwise act to protect Plaintiff from harm, without risk to their own safety.

64. Despite their presence, awareness, and ability to act, Defendants Trooper Meehan, Trooper Reppenhagen, and the John Doe Saratoga County Sheriff's Deputies failed to intervene to stop Trooper Zell's unlawful seizure and use of excessive force via his assault and battery.

65. Defendants further failed to employ basic and accepted law-enforcement de-escalation practices in response to what was, at most, a non-violent domestic dispute, particularly where Plaintiff was non-resisting, non-threatening and holding an infant child.

66. Defendants' failure to act constituted deliberate indifference to Plaintiff's constitutional rights, safety and amounted to tacit approval of Trooper Zell's unlawful conduct.

67. As a direct and proximate result of Defendants' failure to intervene, Plaintiff was subjected to an unlawful seizure, excessive force, and suffered physical injuries, emotional distress, humiliation, and loss of liberty.

68. Defendants Trooper Meehan, Trooper Reppenhagen, and the John Doe Saratoga County Sheriff's Deputies 1-5 are not entitled to qualified immunity because it was clearly

established at the time of the incident that law-enforcement officers have an affirmative duty to intervene to prevent the use of excessive force and other constitutional violations by fellow officers.

69.    Plaintiff is entitled to compensatory and punitive damages against Defendants Trooper Meehan and Trooper Reppenhagen and, upon identification through discovery, seeks leave to amend this Complaint to substitute the true names of the John Doe Saratoga County Sheriff's Deputies.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Municipal Liability (Monell)
*(Against Defendant Saratoga County)*

70.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71.    At all relevant times, Defendant Saratoga County, through the Saratoga County Sheriff's Department, was responsible for the hiring, training, supervision, discipline, and control of its deputies, including the John Doe Saratoga County Sheriff's Deputies involved in the incident described herein.

72.    Saratoga County maintained policies, customs, and practices that were the moving force behind the constitutional violations suffered by Plaintiff, including policies, customs, and practices reflecting a failure to adequately train, supervise, and discipline deputies in constitutionally compliant policing.

73.    In particular, Saratoga County maintained policies, customs, or practices that failed to ensure deputies were adequately trained and supervised with respect to:

    a.    De-escalation during domestic-incident responses;

11

    b.   The constitutional limits on the use of force, especially inside a private residence;

    c.   The affirmative duty to intervene to prevent excessive force and unlawful seizures by fellow officers; and

    d.   Proper handling of non-violent domestic disputes involving infants or children.

74.    Upon information and belief, Saratoga County further maintained a custom or practice of tolerating, acquiescing in, or failing to meaningfully discipline deputies who stand by while excessive force or unlawful seizures occur, thereby fostering an environment in which unconstitutional conduct is implicitly approved.

75.    The need for adequate training and supervision in domestic-incident responses and intervention obligations was obvious, particularly given the well-known risk that such encounters can escalate quickly and result in constitutional violations if officers are not properly trained.

76.    Saratoga County's failure to provide such training and supervision made it highly predictable that deputies would fail to de-escalate volatile situations, fail to intervene when fellow officers used excessive force, and permit unconstitutional seizures to occur.

77.    The John Doe Saratoga County Sheriff's Deputies acted pursuant to these policies, customs, and practices when they stood by, failed to de-escalate the situation, and failed to intervene to prevent Trooper Zell's unlawful seizure and use of excessive force against Plaintiff.

78.    Saratoga County's policies, customs, and practices, and its deliberate indifference to the constitutional rights of persons with whom its deputies come into contact, directly and proximately caused Plaintiff's injuries and damages.

79.    As a result of Saratoga County's unconstitutional policies, customs, and practices, Plaintiff suffered loss of liberty, physical pain, emotional distress, humiliation, and other damages.

80.     Plaintiff seeks compensatory damages against Defendant Saratoga County, together with reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Official-Capacity Policy and Practice Liability
### (Training and Supervision – Prospective Relief Only)
### (Against Defendants Trooper Matthew J. Zell and John Doe New York State Police Supervisors, in their Official Capacities)

81.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82.     At all relevant times, Defendant Trooper Matthew J. Zell and Defendants John Doe New York State Police Supervisors were employees of the New York State Police and were acting under color of state law.

83.     Plaintiff brings this cause of action against Defendants solely in their official capacities, and solely for declaratory and prospective injunctive relief, to remedy ongoing unconstitutional policies, customs, and practices of the New York State Police. Plaintiff does not seek retroactive monetary damages under this cause of action.

84.     The New York State Police, through its supervisory and policymaking officials, maintains policies, customs, and practices governing the training, supervision, and conduct of state troopers responding to domestic incidents and encounters inside private residences.

85.     Upon information and belief, the New York State Police has maintained policies, customs, or practices reflecting inadequate training and supervision of troopers, including but not limited to failures to adequately train and supervise troopers with respect to:

    a.   De-escalation techniques during domestic-incident responses;

13

b. The constitutional limits on the use of force, particularly inside a private residence.

c. The proper handling of encounters involving infants or children;

d. The affirmative duty of troopers to intervene when fellow officers use excessive force or effect unlawful seizures; and

e. Appropriate supervision, discipline, and corrective action when troopers escalate non-violent domestic situations through unnecessary force.

86.     The need for adequate training and supervision of state troopers responding to domestic incidents was obvious, particularly given the known risk that such encounters may escalate and result in constitutional violations if not handled properly.

87.     The New York State Police's failure to provide constitutionally adequate training and supervision created a substantial and foreseeable risk that troopers would unlawfully seize individuals, use excessive force, and escalate otherwise non-violent domestic situations.

88.     Defendant Trooper Zell's unlawful seizure of Plaintiff and use of excessive force occurred pursuant to, and was facilitated by, these inadequate training and supervision practices maintained by the New York State Police.

89.     The unconstitutional policies, customs, and practices of the New York State Police remain ongoing and continue to pose a real and immediate threat of future harm to Plaintiff and to members of the public who may encounter state troopers during domestic-incident responses.

90.     Plaintiff seeks declaratory and prospective injunctive relief requiring the appropriate official-capacity Defendants to implement constitutionally adequate policies, training, supervision, and discipline concerning:

a. Domestic-incident responses.

b. De-escalation techniques;

14

c.  The use of force inside private residences; and

d.  The duty of troopers to intervene to prevent constitutional violations by fellow officers.

91.     Plaintiff does not seek retroactive monetary relief against the State of New York or the New York State Police under this cause of action, but seeks only prospective relief necessary to end ongoing constitutional violations and prevent their recurrence.

## SIXTH CAUSE OF ACTION
### Assault and Battery (New York Common Law)
*(Against Defendants Trooper Matthew J. Zell, Trooper James T. Meehan, and Trooper Kevin P. Reppenhagen, Individually)*

92.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

93.     At all relevant times, Defendants Trooper Matthew J. Zell, Trooper James T. Meehan, and Trooper Kevin P. Reppenhagen were acting as sworn law-enforcement officers; however, the acts complained of herein were intentional, unlawful, and exceeded the scope of any lawful police authority.

94.     Inside Plaintiff's residence and without legal justification, Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen jointly and in concert approached Plaintiff in an aggressive manner, placed their hands on Plaintiff, pushed Plaintiff toward a couch, and exerted physical control over Plaintiff's body.

95.     Defendants' conduct intentionally placed Plaintiff in reasonable apprehension of imminent harmful and offensive physical contact, thereby constituting an assault under New York common law.

96. Defendants thereafter intentionally made harmful and offensive physical contact with Plaintiff by pushing him, striking him, restraining his movements, and assisting in the application of force, all without Plaintiff's consent, thereby constituting a battery under New York common law.

97. At the time of the assault and battery, Plaintiff was not resisting, was not attempting to flee, posed no threat to Defendants or others, and was holding his infant child.

98. The force used by Defendants was not reasonable, necessary, or justified under the circumstances and was excessive in relation to any legitimate law-enforcement objective.

99. Defendants' conduct constituted assault and battery under the laws of the State of New York.

100. As a direct and proximate result of Defendants' assault and battery, Plaintiff suffered physical pain, emotional distress, fear, humiliation, loss of dignity, and other damages.

101. Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen acted intentionally, willfully, and recklessly, with conscious disregard for Plaintiff's safety and rights, entitling Plaintiff to compensatory damages and, to the extent permitted by law, punitive damages.

102. This Court has supplemental jurisdiction over this cause of action pursuant to 28 U.S.C. § 1367, as it forms part of the same case or controversy as Plaintiff's federal claims.

### SEVENTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – Malicious Prosecution
*(Against Defendants Trooper Matthew J. Zell, Trooper James T. Meehan, and Trooper Kevin P. Reppenhagen, Individually)*

103. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

104. Defendants Trooper Matthew J. Zell, Trooper James T. Meehan, and Trooper Kevin P. Reppenhagen initiated and continued a criminal prosecution against Plaintiff by

16

knowingly providing false, misleading, and incomplete information to the Saratoga County District Attorney's Office.

105. The criminal charges against Plaintiff were commenced and maintained without probable cause and were based, in whole or in part, on Defendants' false statements, fabricated allegations, and omissions of material exculpatory facts.

106. Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen played an active and direct role in the prosecution of Plaintiff by preparing and submitting false police reports, arrest reports and swearing to false or misleading accusatory instruments, and influencing prosecutorial decision-making.

107. Defendants acted with actual malice, as they initiated and continued the prosecution with reckless disregard for the truth and with knowledge that their statements and omissions would likely result in Plaintiff's prosecution.

108. The criminal proceeding terminated in Plaintiff's favor by way of a non-conditional Adjournment in Contemplation of Dismissal, which resulted in the dismissal of all charges and constitutes a favorable termination for purposes of a § 1983 malicious-prosecution claim.

109. As a result of Defendants' malicious prosecution, Plaintiff suffered a post-arraignment deprivation of liberty, including but not limited to arrest, court appearances, legal expenses, emotional distress, and reputational harm.

110. Defendants' conduct violated Plaintiff's clearly established rights under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and prosecutions unsupported by probable cause.

111. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered damages including loss of liberty, emotional distress, humiliation, and financial loss.

112.    Defendants Trooper Zell, Trooper Meehan, and Trooper Reppenhagen are not entitled to qualified immunity, as no reasonable officer would believe it lawful to initiate or continue a criminal prosecution based on false statements, fabricated evidence, or the deliberate omission of exculpatory facts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants, jointly and severally where applicable, as follows:

a.  Declaring that the acts and omissions of the individual Defendants described herein violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983;

b.  Awarding Plaintiff compensatory damages against the individual Defendants, including Trooper Zell and the John Doe Defendants, in their individual capacities, in an amount to be determined at trial, for loss of liberty, physical pain, emotional distress, humiliation, loss of dignity, reputational harm, and other injuries suffered;

c.  Awarding Plaintiff punitive damages against the individual Defendants, including Trooper Zell and the John Doe Defendants, in their individual capacities, where the evidence establishes that their conduct was willful, malicious, reckless, or in callous disregard of Plaintiff's federally protected rights;

d.  Awarding Plaintiff nominal damages against the individual Defendants where appropriate, to vindicate the violation of Plaintiff's constitutional rights even in the absence of proven actual damages;

e.  Awarding Plaintiff pre-judgment and post-judgment interest as permitted by law;

f.  Awarding Plaintiff reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 1988 and other applicable provisions of law;

g.  Granting declaratory relief against the appropriate official-capacity Defendants, declaring that the policies, customs, and practices described herein, as applied to Plaintiff, violated the United States Constitution;

h.  Granting narrowly tailored prospective injunctive relief against the appropriate official-capacity Defendants, limited to remedying the specific constitutional violations alleged herein and preventing their recurrence, including injunctive relief requiring constitutionally adequate training and supervision concerning:

   1.  De-escalation during domestic-incident responses;

   2.  Use of force inside private residences;

   3.  Encounters involving non-resisting individuals and infants or children; and

   4.  The affirmative duty of law-enforcement officers to intervene to prevent constitutional violations by fellow officers;

provided that such injunctive relief is limited to measures reasonably necessary to prevent future violations and does not require ongoing judicial supervision beyond what is constitutionally permissible;

i.  Granting appropriate evidentiary and remedial relief related to the preservation of body-worn camera and related audio-visual evidence, including, where warranted by the evidence, adverse-inference instructions, evidentiary sanctions, or other spoliation remedies, if Defendants failed to preserve, altered, destroyed, or withheld such evidence despite a duty to do so;

19

j.  Granting Plaintiff such other and further legal or equitable relief as the Court deems

just and proper, consistent with the evidence and applicable law; and

k.  Granting Plaintiff a trial by jury on all issues so triable.

Dated: January 6, 2026

CLARISA S. GENTILE, ESQ.
**CSG LAW, PLLC.**
*Attorney for Plaintiff*
1545 Union Street First Floor
Schenectady, New York 12309
P:(518) 625-3037 F: 518-252-3759
csgentile@thecsglawfirm.com

20

## VERIFICATION

STATE OF NEW YORK        )
                                          :ss:
COUNTY OF SCHENECTADY)


**SHAHEEM MORRIS** being duly sworn, says that he is the Plaintiff in the above-named

proceeding and that the foregoing petition is true to his own knowledge, except as to matters

therein stated to be alleged on information and belief and as to those matters he believes it to be

true.

_____
Shaheem Morris




Sworn to before me this _____ day
of January 2026

_____
Notary Public


CLARISA S. GENTILE
Notary Public, State of New York
Reg. No. 02GE6409910
Qualified in Saratoga County
Commission Expires November 2 2028

21